IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Zak Hood, | |
| *On behalf of himself and those similarly situated,* | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Jordan Restaurant Group HQ LLC d/b/a Hen Quarter; Jordan Restaurant Group, LLC; Jordan Hospitality Group, LLC; Ron Jordan; Keith Warren; John Doe Corporations 1–10; John Doe 1–10, | |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Zak Hood, on behalf of himself and all similarly-situated individuals, brings this action under 29 U.S.C. § 216(b) and Ohio law against Defendants Jordan Restaurant Group HQ LLC d/b/a Hen Quarter; Jordan Restaurant Group, LLC; Jordan Hospitality Group, LLC; Ron Jordan; Keith Warren; John Doe Corporations 1–10; John Doe 1–10 (collectively "Defendants"). This action seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60. and damages under the theory of unjust enrichment.

2.      Defendants operated the restaurant "Hen Quarter" in Dublin, OH until early January 2022.

3.      Defendants closed Hen Quarter in early January 2022 and did not pay Defendants' employees for the employees' final weeks of work.

4.      In other words, Defendants have not paid Hen Quarter employees wages earned for all of their hours worked.

5.      Plaintiff seeks to represent employees who worked at Defendants' restaurant, Hen Quarter.

6.      Defendants have willfully violated the FLSA and Ohio wage law by failing to pay Plaintiff and Defendants' other employees the minimum wage.

7.      All employees at Defendants' restaurant, Hen Quarter, are subject to the same FLSA- and Ohio wage law-violating action in that Defendants have failed to pay them for all hours worked.

8.      Plaintiff brings this action on behalf of himself and similarly situated former employees of Defendants who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendants.

9.      Plaintiff brings this action on behalf of himself and similarly situated former employees pursuant to Federal Rule of Civil Procedure 23 to remedy violations of Ohio Const. Art. II, § 34a, the OMFWSA, the Prompt Pay Act, R.C. § 2307.60, and the doctrine of unjust enrichment.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

11.     This Court has supplemental jurisdiction over Plaintiff's Ohio law claims under 28 U.S.C. § 1367.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**PARTIES**

**Plaintiff**

**Zak Hood**

13.     Plaintiff Zak Hood resides in Columbus, Ohio.

14.     At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA, the OMFWSA, and Section 34a.

15.     Plaintiff has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

**Defendants**

16.     Each of the Defendants had control over Plaintiff and similarly situated employees' working conditions.

17.     At all relevant times, Defendants have shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated employees at Defendants' restaurants.

18.     At all relevant times, Defendants have had direct or indirect control over the terms and conditions of Plaintiff's work and the work of similarly situated employees.

19.      At all relevant times, Defendants possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees, and have exercised that authority.

20.     Defendants suffered or permitted Plaintiff and other employees to work.

**Defendant Entities**

21.     The Defendant Entities— Jordan Restaurant Group HQ LLC d/b/a Hen Quarter; Jordan Restaurant Group, LLC; and Jordan Hospitality Group, LLC are domestic limited liability companies with their principal places of business in Ohio.

22.     The Defendant Entities were founded, owned, and/or operated by Defendants Ron Jordan and Keith Warren.

23.     Upon information and belief, Defendant entities primarily function to operate Hen Quarter and other restaurants.

24.     The Defendant Entities operated the Hen Quarter restaurant under the trade name "Hen Quarter."

25.     The Defendant Entities have authority to hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records. The Defendant Entities form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operated the Hen Quarter restaurant and maintain interrelated operations, centralized control of labor relations, common management and common ownership and financial control.

4

26.     Because the work performed by Plaintiff and all other employees benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

27.     Each of the Defendant Entities has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     Each of the Defendant Entities directly or indirectly controls of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

29.     Each of the Defendant Entities maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

30.     Upon information and belief, Defendant Entities applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees, including policies, practices and procedures relating to payment of minimum wages, overtime wages, timekeeping, and the tip credit.

31.     Each of the Defendant Entities is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

32.     Each of the Defendant Entities has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.     Each of the Defendant Entities has gross revenue that exceeds $500,000 per year.

34. Collectively, the Defendant Entities have gross revenue that exceeds $500,000 per year.

**Ron Jordan**

35. Ron Jordan is the owner of the Defendant Entities.

36. Ron Jordan involved in the operation of Defendant Entities.

37. Upon information and belief, Ron Jordan is the CEO of some or all of the Defendant Entities.

38. Through the Defendant Entities, Ron Jordan owned and operated Hen Quarter.

39. Ron Jordan supervised and directed the employment of Plaintiff.

40. Ron Jordan is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, and the OMFWSA because he owns and operates the Defendant Entities, serves as a member of the Defendant Entities, ultimately controls significant aspects of the Defendant Entities' day-to-day functions, and ultimately controls compensation of employees. 29 U.S.C. § 203(d).

41. At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had financial control over the operations at each of the "Defendant Entities" named corporate defendants.

42. At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has a role in significant aspects of Defendant Entities' day-to-day operations.

43. At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had control over Defendants' pay policies.

44.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had power over personnel and payroll decisions at Defendant Entities, including but not limited to influence over employee pay.

45.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to hire, fire and discipline employees, including Plaintiff and other servers.

46.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

47.     At all times relevant, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to transfer the assets and liabilities of his Defendant Entities corporate entities.

48.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to declare bankruptcy on behalf of Defendant Entities.

49.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to enter into contracts on behalf of Defendant Entities.

50.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan has had the power to close, shut down, and/or sell Defendant Entities.

51.     At all relevant times, by virtue of his role as owner of Defendant Entities, Ron Jordan had authority over the overall direction of Defendant Entities and was ultimately responsible for their operations.

52.     Defendant Ron Jordan had the authority to not pay the employees for their last weeks of work.

53.     Defendant Entities function for Ron Jordan's profit.

54.     Ron Jordan has influence over how Defendant Entities can run more profitably and efficiently.

**Keith Warren**

55.     Keith Warren is an owner of the Defendant Entities.

56.     Keith Warren involved in the operation of Defendant Entities.

57.     Upon information and belief, Keith Warren is the CFO of some or all of the Defendant Entities.

58.     Through the Defendant Entities, Keith Warren owned and operated Hen Quarter.

59.     Keith Warren supervised and directed the employment of Plaintiff.

60.     Keith Warren is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, and the OMFWSA because he owns and operates the Defendant Entities, serves as a member of the Defendant Entities, ultimately controls significant aspects of the Defendant Entities' day-to-day functions, and ultimately controls compensation of employees. 29 U.S.C. § 203(d).

61.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had financial control over the operations at each of the "Defendant Entities" named corporate defendants.

62.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has a role in significant aspects of Defendant Entities' day-to-day operations.

63.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had control over Defendants' pay policies.

64.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had power over personnel and payroll decisions at Defendant Entities, including but not limited to influence employee pay.

65.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to hire, fire and discipline employees, including Plaintiff and other servers.

66.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

67.     At all times relevant, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to transfer the assets and liabilities of his Defendant Entities corporate entities.

68.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to declare bankruptcy on behalf of Defendant Entities.

69.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to enter into contracts on behalf of Defendant Entities.

70.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren has had the power to close, shut down, and/or sell Defendant Entities.

71.     At all relevant times, by virtue of his role as owner of Defendant Entities, Keith Warren had authority over the overall direction of Defendant Entities and was ultimately responsible for their operations.

72.     Defendant Keith Warren had the authority to not pay the employees for their last weeks of work.

73.     Defendant Entities function for Keith Warren's profit.

74.     Keith Warren has influence over how Defendant Entities can run more profitably and efficiently.

**Doe Corporations 1-10**

75.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies in whole or in part that also qualify as "employers" of Plaintiff and the other Hen Quarter employees as that term is defined by the FLSA and Ohio wage law.

76.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

77.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the other Hen Quarters employees as that term is defined by the FLSA and Ohio wage law.

78.     Upon information and belief, Ron Jordan has entered into co-owner relationships with business partners, and those individuals might also qualify as "employers" of Plaintiff and the other Hen Quarter employees as the term is defined by the FLSA and Ohio wage law.

79.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### CLASS-WIDE FACTUAL ALLEGATIONS

80.     During all relevant times, Defendants have operated the restaurant Hen Quarter in Dublin, Ohio.

81.     Plaintiff and the similarly situated employees he seeks to represent worked for Defendants.

82.     All Defendants' Hen Quarter employees have not been paid at least their last paycheck.

83.     For their last weeks of work, Defendants did not pay the employees anything.

84.     When Defendants *did* pay the workers, Defendants paid servers and bartenders at "tipped minimum wage"—minimum wage minus the maximum allowable tip credit—for each hour for which they received compensation.

85.     Defendants failed to satisfy all of the requirements in taking a tip credit from bartenders' and servers' wages. Specifically, Defendants failed to notify servers that they would be taking a tip credit from their wages and failed to compensate servers for all hours worked.

86.     Defendants failed to inform servers of the tip credit requirements of the FLSA.

87.     At all relevant times, Defendants failed to compensate their Hen Quarter employees for all hours worked.

88.     As a result of Defendants' policy and practice of failing to pay employees for all hours worked, Hen Quarter employees were paid less than tipped minimum wage.

11

89.     On approximately January 11, 2022, Defendants informed their employees that Hen Quarter was closing and have not paid Plaintiff and the Hen Quarter employees their wages earned.

90.     Defendants have failed to properly take a tip credit from employees' wages.

91.     Defendants have failed to pay employees for all hours worked.

92.     Defendants have willfully failed to pay federal and Ohio state minimum wage and overtime to Plaintiff and similarly situated Hen Quarter employees.

**PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS**

93.     Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

94.     Plaintiff worked as a server at Hen Quarter from approximately July 2021 to January 11, 2022.

95.     As a server at Hen Quarter, Plaintiff's primary job duties included waiting on guests and completing opening and closing "side work."

96.     Plaintiff typically worked 20–25 hours per week.

97.     On approximately January 11, 2022, Plaintiff lost his job when Defendants closed Hen Quarter without notice.

98.     Defendants have not paid him his wages earned for his last weeks of work.

**COLLECTIVE ACTION ALLEGATIONS**

99.     Plaintiff brings the First and Second Counts under 29 U.S.C. 216(b) on behalf of himself and a collective consisting of:

All former employees employed by Defendants at the restaurant Hen Quarter between December 1, 2021, and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

100.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing pay the wages of Plaintiff and the FLSA Collective and refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked. Plaintiff's claims are essentially the same as those of the FLSA Collective.

101.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

102.    Defendants are aware or should have been aware that, in order to take a tip credit from the wage of Plaintiff and the FLSA Collective, the federal law required them to inform Plaintiff and the FLSA Collective of the tip credit provisions of the FLSA.

103.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

104.    The FLSA Collective members are readily identifiable and ascertainable.

105.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names, addresses, email addresses, and phone numbers are readily available from Defendants' records.

106.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

107.   Plaintiff brings the Third, Fourth, and Fifth Counts under Federal Rule of Civil

Procedure 23, on behalf of himself and a class of persons consisting of:

> All current employees employed by Defendants at the Hen Quarter restaurant
> between December 1, 2021 and the date of final judgment in this matter ("Rule 23
> Class").

108.   Excluded from the Rule 23 Class are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and otherwise

proper requests for exclusion from the Rule 23 Class.

109.   The number and identity of the Rule 23 Class members are ascertainable from

Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for

each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of

notice and other purposes related to this action, their names, addresses, email addresses, and

phone numbers are readily available from Defendants. Notice can be provided by means

permissible under Federal Rule of Civil Procedure 23.

110.   The Rule 23 Class is so numerous that joinder of all members is impracticable, and

the disposition of their claims as a class will benefit the parties and the Court.

111.   There are more than 50 Rule 23 Class members.

112.   Plaintiff's claims are typical of those claims which could be alleged by any Rule 23

Class member, and the relief sought is typical of the relief which would be sought by each Rule 23

Class member in separate actions.

113.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to properly take a tip credit from their wages.

114.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with OMFWSA, Section 34a, O.R.C. § 4113.15, and the doctrine of unjust enrichment.

115.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated to Defendants' common policies, practices, and patterns of conduct. Defendants' policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

116.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

117.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

118.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

119.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

120.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to

vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

121.    Upon information and belief, Defendants and other employers throughout the state violate the OMFWSA, Section 34a, and O.R.C. § 4113.15. Employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a

16

degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

122. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

123. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a. Whether Defendants paid Plaintiff and the Rule 23 Class members for all hours worked;

    b. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

    c. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

    d. The nature and extent of class-wide injury and the measure of damages for those injuries.

    e. Whether Defendants were unjustly enriched at Plaintiff and the Rule 23 Class's expense.

**CAUSES OF ACTION**
**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

124. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

125. Plaintiff and the FLSA Collective are employees entitled to receive no less than minimum wage for all hours worked.

126.    Defendants failed to pay Plaintiff and the FLSA Collective for all hours worked.

127.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

128.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

129.    As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Class)**

130.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

131.    From since approximately December 2021, Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by failing to properly take a tip credit from their wages.

132.    Article II § 34a of the Ohio Constitution requires that employees be paid not less than minimum wage as determined by an inflation index for all hours worked.

133.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

134.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages in damages under Section 34a, costs, and attorneys' fees.

18

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

135.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

136.    During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

137.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

138.    Plaintiff and the Rule 23 Class's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

139.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

140.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

141.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

19

142.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

143.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Class have been injured as a result.

144.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

145.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

146.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

147.     Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants, namely, their online order tips from all times relevant to the present.

148.     Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants, namely, their wages from approximately December 2021 to the present.

149.     Defendants retained the wages of Plaintiff and the Rule 23 Class.

150.     Defendants retained tips intended for Plaintiff and the Rule 23 Class.

151.     Defendants knew that Plaintiff and the Rule 23 Class conferred that benefit on Defendants.

152.     As described above, Defendants received benefits as a result of retaining wages and tips provided by customers to the Plaintiff and the Rule 23 Class.

20

153.    The benefits include, but are not limited to, the employees' labor.

154.    Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Class for these benefits.

155.    Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

156.    As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Zak Hood prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.    A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

F.     An award of unpaid minimum wages and overtime wages due under Section 34a and the OMFWSA.

G.     An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

H.     Liquidated damages under O.R.C. § 4113.15.

I.     Compensatory and punitive damages under O.R.C. § 2307.60.

J.     An award of the value of the benefits for which Defendants were unjustly enriched.

K.     An award of prejudgment and post-judgment interest.

L.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

M.     Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ Riley Kane
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
rkane@billerkimble.com

www.billerkimble.com

Counsel for Plaintiff and the putative class

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Riley Kane*
Riley E. Kane